FILED

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA OCALA
DIVISION

2018 AUG -1  PM 12: 04

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

Case No.:

CASEY E. WALSH,
          Plaintiff,

v.

S: 18 -cv-462-oc 30PRL

The CITY OF OCALA, a municipal corporation,
MAYOR REUBEN GUINN, COUNCIL MEMBERS
MARY SUE RICH, JAY MUSLEH, MATTHEW
WARDELL, BRENT MALEVER, JAMES HILTY, and
CHIEF KENNETH GRAHAM, SHERIFF WILLIAM
WOODS, DEPUTY CHIEF MICHAEL BALKEN, and
CAPTAIN LOUIS BIONDI, in their individual capacities
alone.
          Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff, CASEY E. WALSH ("Plaintiff"), by and through her undersigned counsel, and sues Defendants alleging as grounds therefore:

### Introduction

1.  This is an action for sex discrimination, hostile work environment, retaliation, neglect to prevent, and conspiracy brought by a female police officer who was harassed by her chief of police because of her sex (female). After complaining about the sex-based discrimination, Plaintiff was retaliated against for her opposition to the unlawful employment practices. Plaintiff sues to enforce her rights under the Fourteenth Amendment of the Constitution of the United States; 42 U.S.C. §1983 (2016); and Title

VII of the Civil Rights Act of 1964, *42 U.S.C. 2000e et seq.*, as amended by the Civil Rights Act of 1991 [42 U.S.C. §1981a], seeking compensatory and punitive damages, interest, costs, and attorney's fees. Plaintiff also invokes the Court's supplemental jurisdiction to pursue Plaintiff's parallel state law claims and remedies under the Florida Civil Rights Act of 1992.

### Jurisdiction and Venue

2. This Court has federal-question jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331, as well as jurisdiction under 28 U.S.C. §1343(a)(3), as this is an action to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. Because the state law claims arose out of the same nucleus of operative facts as the federal claims, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3. Under 28 U.S.C. §1391(b)(1) and (2), venue is proper in the Ocala Division of the United States District Court for the Middle District of Florida because all claims arose, and all Defendants reside in, Marion County, Florida.

### Parties

4. Plaintiff, a female police officer, who at all times material was employed by the City of Ocala ("CITY"), is protected by §1983, Title VII, and the Florida Civil Rights Act because;

   a. Plaintiff is an "employee" as defined in 42 U.S.C. §2000e(f) and a "person" for 42 U.S.C. §§ 1981a and 1983 purposes;

   b. Plaintiff is female; and

2

    c.  Plaintiff engaged in a protected activity by complaining internally about discrimination and by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

5. CITY is a Florida municipal corporation with its principal place of business in Marion County, Florida, and is an "employer" as defined by 42 U.S.C. §2000e(b) and §760.02(7), FLA. STAT. (2016), as well as a "person" for 42 U.S.C. §§ 1981a and §1983 purposes. At all times relevant, CITY employed more than 500 employees.

6. Defendants, Kenneth Graham ("GRAHAM"), Reuben Guinn ("GUINN"), Mary Sue Rich ("RICH"), Jay Musleh ("MUSLEH"), Matthew Wardell ("WARDELL"), Brent Malever ("MALEVER"), James Hilty ("HILTY"), William Woods ("WOODS"), Michael Balken ("BALKEN"), and Louis Biondi ("BIONDI") at all times relevant acted under the color of state law.

7. Defendants, Kenneth Graham ("GRAHAM"), Reuben Guinn ("GUINN"), Mary Sue Rich ("RICH"), Jay Musleh ("MUSLEH"), Matthew Wardell ("WARDELL"), Brent Malever ("MALEVER"), James Hilty ("HILTY"), William Woods ("WOODS"), Michael Balken ("BALKEN"), and Louis Biondi ("BIONDI") are individuals residing in Marion County, Florida, and are "persons" for 42 U.S.C. §§ 1981 and 1983 purposes.

## Satisfaction of Conditions Precedent

8. On or about September 15, 2016, Plaintiff filed a Charge of Discrimination with the EEOC alleging sex-based discrimination and retaliation.

9. The EEOC charge reads as follows:

I am being discriminated against because of my sex (female). I am also being subjected to sexual harassment, gender stereotyping and a hostile work environment. I was hired on August 3, 2009 as a Police Officer. On May 14, 2016, I attended an event at the National Law Enforcement Memorial. After the event a small group of officers and Chief K. Gregory Graham attended a bar during evening hours. Despite being aware of my sexual orientation, Chief Graham degraded my sexual preference. To explain; while at the bar, I attempted to use the restroom. There were two restrooms adjacent to one another. Chief Graham was exiting one restroom as I was entering the other restroom. I noticed that there was a urinal and a toilet. I commented upon it to myself, and in response Chief Graham responded by saying that I could use the urinal and he'd use the toilet. He made a joke in an attempt to reverse gender roles. Chief Graham also humiliated in the presence of my colleagues by suggesting that I had a penis larger than the male officers amongst the group. Chief Graham laughed denoting his actions to good humored banter. On May 31, 2016, I disclosed to Sergeant Lisa Bienko some of the discriminatory actions that Chief Graham has subjected me to. I noticed shortly thereafter that Chief Graham began to discredit my character and wrongfully discipline me in objection to my opposition to his discriminatory actions, and my complaints of sexual harassment. I believe that I am being discriminated against because of my sex (female). I also believe that I am a victim of gender stereotyping, in violation of Title VII of the Civil Rights Act of 1964, as amended.

10. Plaintiff's EEOC Charge was cross-filed with the Florida Commission on Human Relations ("FCHR").

11. Because on or about May 15, 2018, the EEOC issued Plaintiff a Notice of Rights regarding Plaintiff's charges of discrimination and retaliation, entitling Plaintiff to file a civil action within 90 days of receipt, and this action has been commenced within 90 days, it is timely. (*See* Exhibit #1, EEOC Plaintiff's Notice of Rights, commonly referred to as "Right to Sue," May 15, 2018).

12. All required conditions precedent were performed prior to bringing this action under §1983, Title VII, and the Florida Civil Human Rights Act.

## The Applicable Statutes

13. 42 U.S.C. §1981a (2016) provides in its pertinent parts;

4

In an action brought by a complaining party under section 706 ... [42 U.S.C. 2000e5...] ... against a respondent who engaged in unlawful intentional discrimination ... prohibited under section 703 [or] 704 ... [42 U.S.C. §§ 2000e-2, 2000e-3 ...] the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

14. 42 U.S.C. §1983 (2016) provides in its pertinent parts;

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

15. Title VII of the Civil Rights Act of 1964, as amended, relevantly provides at 42 U.S.C.

§§ 2000e-2(a) and 2000e-3 (Sections 703(a) and 704 of the Act):

§ 2000e-2. [§ 703]

(a)  Employer practices—
It shall be an unlawful employment practice for an employer-(1) ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ... or (2) to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex ....

§ 2000e-3 [§ 704]

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

16. The Florida Civil Rights Act ("FCRA") relevantly provides at § 760.10(1);

(1) It is an unlawful employment practice for an employer:
(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

17. The FCRA further provides at § 760.10(7):

(7) It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

**General Allegations**

18. On or around August 3, 2009, Plaintiff commenced employment as a police officer for

CITY at the Ocala Police Department ("OPD").

19. On or about January 20, 2012, GRAHAM was rehired by CITY to be chief of police

for OPD and was, at all times material, Plaintiff's chief commanding officer.

20. At all times material, RICH, MUSLEH, WARDELL, MALEVER, HILTY, and

GUINN, pursuant to the Ocala City Charter, acting under color of state law, were

supervisors of Defendant GRAHAM.

21. Since the re-hiring of GRAHAM, Plaintiff, an openly gay female, has been subjected

to numerous sexually charged comments regarding her appearance, her sexuality, and

the romantic partners Plaintiff has dated and/or brought to official functions.

22. On or about February 1, 2016, at an OPD awards ceremony which the Plaintiff and her

girlfriend attended, GRAHAM made several sexually charged comments regarding the

6

physical appearance of Plaintiff's date, including noting the view of Plaintiff's date "from behind," and implying that he, GRAHAM, would be interested in trading sexual partners with Plaintiff.

23. On or about May 14, 2016, at the National Law Enforcement Memorial in New York, GRAHAM made several sexually charged comments toward, and in the presence of Plaintiff, including comments about anal and oral sex.

24. On or about May 14, 2016, GRAHAM entered a unisex bathroom with Plaintiff for the purpose of GRAHAM to sit on the toilet, and Plaintiff to stand at the urinal, to depict gender role reversal.

25. On or about May 19, 2016, at the Fallen Officer Memorial in Ocala, Florida, when GRAHAM's wife asked Plaintiff if she could perform a "ride along" with Plaintiff, GRAHAM publicly refused to allow it, announcing his fear that his wife would engage in intimate behavior with Plaintiff.

26. On or about May 31, 2016, while conducting K-9 training, Plaintiff was approached by GRAHAM, who commented on Plaintiff's appearance in a photograph he saw, specifically mentioning her hair and her makeup, and made the sound, "yum, yum, yum."

27. On or about September 15, 2016, GRAHAM stated that he would love it if Plaintiff were to date his daughter, but that he feared that if Plaintiff were to be allowed in his home, GRAHAM's wife may have a sexual encounter with Plaintiff.

7

28. GRAHAM has a reputation for sexually charged behavior toward, and inappropriate contact with his subordinates and others which was, and is, well known by CITY and its agents, throughout the department, and by Plaintiff.

29. Upon information and belief, GRAHAM, engaged in an extra-marital affair with a Marion County Sheriff's Deputy while employed at the OPD as a Sergeant. GRAHAM's actions were made public by the local newspaper.

30. Upon information and belief, similarly situated Officers have been immediately terminated for the same conduct that Graham was promoted after engaging in.

31. At different times, Plaintiff complained informally about GRAHAM's actions to her superior officer, Sergeant Lisa Bienko, who personally witnessed at least one of GRAHAM's sexually charged actions towards Plaintiff.

32. Plaintiff also complained formally and simultaneously through official police union channels, and by filing a complaint with the EEOC.

33. On or about September 15, 2016, after Plaintiff and others filed formal grievances with CITY and the EEOC, CITY purported to begin an "investigation" into GRAHAM's conduct, utilizing a law firm which had a deep, contractual and preexisting relationship with CITY.

34. On or about September 19, 2016, GUINN, an agent of CITY, publicly stated, at both city meetings and on local television stations, "I trust Greg Graham and I stand beside Greg Graham and we will do the "investigation" and move on from there."

35. On or about September 19, 2016, before a single inquiry into the allegations had been conducted, GUINN publicly stated that the "morale of the Department has been hurt by

the actions of these individuals…" and that the "Chief has been attacked" by the officers because of their allegations.

36. GUINN further stated that GRAHAM "would *not* be placed on leave during the investigation."

37. On or about September 20, 2016, GUINN stated that Plaintiff's claims were "merely allegations," and that he was "not concerned" that the Plaintiff, or any of the other complaining officers, would be forced to work under GRAHAM while the investigation was taking place.

38. On or about September 20, 2016, GUINN further stated that it would be "unfair" for GRAHAM to be suspended during the investigation,

39. On or about September 20, 2016, HILTY publicly reminded GUINN that, "In any other situation, I believe that somebody else would have been removed."

40. On or about September 20, 2016, GUINN also stated:

When I hired Greg Graham in 2012, I sat here in a room full of people and answered every objection for three and a half hours. I stand by that decision. I know I'm doing the right thing by not putting him on administrative leave. This is just amazing, um, uh, that this is happening.

41. On or about September 23, 2016, GUINN, RICH, MUSLEH, WARDELL, MALEVER, and HILTY, contrary to the City Charter rules, conspired to accept GRAHAM's request to voluntarily go on administrative "leave," rather than suspension, because suspension had a "bad connotation to it".

42. On or about September 20, 2016, Plaintiff's undersigned Attorney requested that both GUINN and GRAHAM be ordered not to tamper with witnesses or to intimidate the Plaintiff.

43. On or about September 23, 2016, RICH, MUSLEH, WARDELL, MALEVER, and HILTY confirmed that while on administrative leave GRAHAM was ordered to stay away from the Police Department and to not have any contact with any OPD employees other than the Deputy Chief of Police and then only when initiated by the Deputy Chief of Police.

44. When Plaintiff's undersigned Attorney requested that the City Council members order GUINN not to speak at the OPD scheduled daily briefings at 7:00 a.m., 3:00 p.m., and 9:00 p.m., for the purpose of voicing his allegiance with GRAHAM, GUINN responded with:

   So, I'm going to be over there at 7:00 a.m. in the morning, 3:00 p.m. and 9:00 p.m. and if you want to do something to stop me you send someone over there to arrest me for speaking my mind.

45. During the "investigation" RICH, emphatically stated at a public meeting while referring to GRAHAM's conduct that "this was not sexual harassment."

46. Plaintiff, through undersigned Council, provided a list of relevant witnesses to the CITY hired "investigators" of Officers and civilians that could corroborate her allegations against GRAHAM.

47. During the "investigation" the CITY hired "investigators" chose not to interview key witnesses, including but not limited to, Sergeant Lisa Bienko.

48. On or about January 13, 2017, the private law firm hired by CITY to "investigate" Plaintiff and other officers' allegations against GRAHAM delivered a finding favorable to GRAHAM.

49. Despite being aware that testimony and photographs obtained during the "investigation" corroborated Plaintiff's allegations against GRAHAM, and despite his reputation for engaging in inappropriate acts while on-duty GUINN, RICH, MUSLEH, WARDELL, MALEVER, and HILTY ratified GRAHAM's actions when they re-instated him.

50. After January 17, 2017, notwithstanding Plaintiff having complained to the Department, and the EEOC, the hostile work environment and retaliation continued.

51. Nearly every sworn Law Enforcement Officer employed by OPD has been deputized by Sheriff WOODS for the purpose of extending the CITY Officers' jurisdictional boundaries in certain circumstances such as vehicle pursuits of suspects and joint task force initiatives.

52. On or about January 19, 2017, the same week that GRAHAM was reinstated, Plaintiff's deputy status was suddenly, and without explanation, rescinded by WOODS, a longtime friend and former subordinate of GRAHAM.

53. Upon information and belief, WOODS conspired with GRAHAM prior to rescinding Plaintiff's Deputy status.

54. On or about January 31, 2017, describing his relationship with WOODS, GRAHAM states:

> I'm excited that Billy was elected Sheriff. One of the reasons is because he is my friend. You know you always want good things to happen to your friends. . . .. I've worked with Billy for twenty-six years, so you know, we've gotten to know each other real, very well. So, you know it's not the Chief calling the Sheriff and asking for anything, or the Sheriff calling the Chief, asking for something, it's Greg calling Billy, or Billy calling Greg.

55. On or about December 13, 2016, GUINN describing his relationship with WOODS, states, "We have one of our own as the Sheriff."

56. The only other officer whose deputy status was rescinded by WOODS had given corroborating testimony substantiating Plaintiff's claims during CITY's investigation and confronted the CITY-hired "investigators" concerning their clearly displayed bias in favor of GRAHAM while conducting interviews.

57. On or about February 6, 2017, also shortly after GRAHAM's return to duty, BALKEN, upon information and belief after conspiring with GRAHAM, elevated a supervisor inquiry against Plaintiff regarding mistakenly wearing the wrong belt with her uniform for a mere five minutes into a full blown Internal Affairs ("IA") investigation.

58. While Plaintiff was exercising the administrative appeals process known as a Complaint Review Board, GRAHAM and OPD Officer Mark Crandall refused to abide by Department directives and appear before the Complaint Review Board to answer questions regarding their testimony against Plaintiff during the uniform IA.

59. It was both GRAHAM and Officer Crandall's testimony that revealed that GRAHAM had in fact had contact with Officer Crandall while on administrative leave, contrary to specific orders not to do so.

60. Upon information and belief, GRAHAM had contact with many OPD Officers and CITY employees during the investigation for the purpose of furthering the conspiracy against Plaintiff.

61. On or about April 14, 2017, Plaintiff suffered the unprecedented discipline of ten DAYS suspension and REMOVAL from the K-9 Unit. This included CITY removing

Plaintiff's beloved K-9 partner from her by showing up at her house, unannounced, and demanding that she turn over the K-9 Officer to them.

62. Since this incident, BALKEN has been subsequently promoted from Major to Deputy Chief by GRAHAM.

63. Upon information and belief, BIONDI, head of Internal Affairs, also after conspiring with GRAHAM, refused to act on Plaintiff's complaints that the IA investigation and the Complaint Review Board were tainted by GRAHAM's conspiring actions, contact with possible witnesses, and quest for retaliation.

64. After refusing to act on Plaintiff's assertions of untruthfulness and an incomplete and tainted investigation, BIONDI was subsequently promoted from Captain to Major by GRAHAM.

65. BIONDI next opened an additional IA investigation into Plaintiff based upon the verbal allegations of battery and assault made by Fraternal Order Police "FOP" representative Michael Saxe, which, as Plaintiff and unbiased witnesses told BIONDI, were easily refuted by available video evidence.

66. Upon information and belief, prior to obtaining the readily available video evidence, BIONDI, after conspiring with GRAHAM, opened the formal IA against Plaintiff accusing her of battery and assault.

67. This all culminated in the Plaintiff's constructive discharge on July 14, 2017.

### COUNT I
### §1983 CLAIM AGAINST DEFENDANT GRAHAM IN INDIVIDUAL CAPACITY— SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

68. Plaintiff realleges and incorporates the allegations of paragraphs 1-12, 14, 18-32, and 50 as if fully set forth in Count I.

69. Prior to the filing of this action, as alleged more particularly above in paragraphs one, GRAHAM, Plaintiff's supervisor and Chief of Police, violated Plaintiff's right to equal protection under the Fourteenth Amendment as secured by §1983.

70. At all times relevant, GRAHAM was acting under color of state law.

71. As a direct and proximate result of GRAHAM's misconduct, Plaintiff has suffered mental and emotional distress including grief, shame, humiliation, embarrassment, anger, loss of enjoyment of life, worry, and disappointment as well as pecuniary losses related to her employment.

**WHEREFORE**, Plaintiff, Casey E. Walsh, prays that this Court will grant judgment:

    i. Permanently enjoining GRAHAM and any and all other persons in active concert or participation with GRAHAM from violating Plaintiff's Fourteenth Amendment rights;

    ii. Awarding judgment against GRAHAM for the back pay and benefits which Plaintiff would have been entitled to but for GRAHAM's sexually discriminatory acts;

    iii. Awarding judgment against GRAHAM for compensatory and punitive damages;

    iv. Awarding Plaintiff costs, including reasonable attorney's fees; and

    v. Granting such other and further relief as this Court deems just.

**COUNT II §1983 CLAIM AGAINST SUPERVISORY DEFENDANTS GUINN, RICH, MUSLEH, WARDELL, AND MALEVER IN INDIVIDUAL CAPACITY—SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT**

72. Plaintiff realleges and incorporates the allegations of paragraphs 1-12, 14, 18-31, and 50 as if fully set forth in Count II.

73. At all times relevant, GUINN, RICH, MUSLEH, WARDELL, MALEVER, and HILTY, (collectively "Supervisory Defendants"), acted under color of state law.

74. The acts of the Supervisory Defendants' subordinate, GRAHAM, deprived Plaintiff of her particular rights under the Fourteenth Amendment as secured by §1983.

75. The Supervisory Defendants knew GRAHAM was engaging in these acts and knew or reasonably should have known that GRAHAM's acts would deprive Plaintiff of these rights.

76. Supervisory Defendants failed to act to prevent GRAHAM from engaging in such conduct.

77. The Supervisory Defendants engaged in conduct that showed reckless or callous indifference to the deprivation by GRAHAM of Plaintiff's rights.

78. The Supervisory Defendants' conduct was so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused her ultimate injury.

79. As a direct and proximate result of Supervisory Defendants' misconduct, Plaintiff has suffered mental and emotional distress including grief, shame, humiliation, embarrassment, anger, loss of enjoyment of life, worry, and disappointment as well as pecuniary losses related to her employment.

**WHEREFORE,** Plaintiff, Casey E. Walsh, prays that this Court will grant judgment:

i.   Permanently enjoining Supervisory Defendants, their officers, agents, servants, employees, and all other persons in active concert or participation with Supervisory Defendants from violating Plaintiff's Fourteenth Amendment rights as secured by §1983;

ii.  Awarding judgment against Supervisory Defendants for the back pay and benefits which Plaintiff would have been entitled to but for the Supervisory Defendant's acts and omissions;

iii. Awarding judgment against Supervisory Defendants for compensatory and punitive damages;

iv.  Awarding Plaintiff costs, including reasonable attorney's fees; and

v.   Granting such other and further relief as this Court deems just.

## COUNT III §1983 CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANT CITY BASED ON UNLAWFUL OFFICIAL POLICY, PRACTICE, OR CUSTOM

80. Plaintiff realleges and incorporates the allegations of paragraphs 1-12, 14, 18-31, and 50 as if fully set forth in Count III.

81. At all times relevant, GRAHAM acted under color of state law.

82. The acts of GRAHAM deprived Plaintiff of her particular rights under the Fourteenth Amendment as secured by §1983.

83. GRAHAM acted pursuant to a widespread and longstanding practice or custom of CITY to protect GRAHAM at all costs.

84. CITY's widespread and longstanding practice or custom caused the deprivation of Plaintiff's rights by GRAHAM; that is, CITY's widespread and longstanding practice

16

or custom of protecting GRAHAM at all costs is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

**WHEREFORE**, Plaintiff, Casey E. Walsh, prays that this Court will grant judgment:

     i.    Permanently enjoining CITY and its officers, agents, servants, employees, and all other persons in active concert or participation with CITY from violating Plaintiff's Fourteenth Amendment rights as secured by §1983;

    ii.    Awarding judgment against CITY for the back pay and benefits which Plaintiff would have been entitled to but for CITY's acts and omissions;

    iii.    Awarding judgment against CITY for compensatory damages;

    iv.    Awarding Plaintiff costs, including reasonable attorney's fees; and

    v.    Granting such other and further relief as this Court deems just.

## COUNT IV §1983 RATIFICATION CLAIM AGAINST DEFENDANTS GUINN, RICH, MUSLEH, WARDELL, MALEVER, AND HILTY

85. Plaintiff realleges and incorporates the allegations of paragraphs 1-12, 14, and 18-50 as if fully set forth in Count IV.

86. GRAHAM acted under color of state law.

87. GRAHAM's actions deprived Plaintiff of her rights under the Fourteenth Amendment as secured by §1983.

88. GUINN, RICH, MUSLEH, WARDELL, MALEVER, and HILTY (collectively "Final Policy Makers") acted under color of state law.

89. Final Policy Makers had final policy making authority from CITY concerning the acts of GRAHAM.

90. Final Policy Makers ratified GRAHAM's acts, that is, Final Policy Makers knew of and specifically made a deliberate choice to approve GRAHAM's acts and the basis for them by publicly shaming the Plaintiff, publicly downplaying the incidents, and by emphatically stating that the acts of GRAHAM were not sexual harassment, and by re-instating GRAHAM to the position of Chief of Police.

**WHEREFORE**, Plaintiff, Casey E. Walsh, prays that this Court will grant judgment:

    i.    Permanently enjoining Final Policy Makers and any and all other persons in active concert or participation with Final Policy Makers from violating Plaintiff's Fourteenth Amendment rights as secured by §1983;

    ii.    Awarding judgment against Final Policy Makers for the back pay and benefits which Plaintiff would have been entitled to but for the Final Policy Makers acts;

    iii.    Awarding judgment against Final Policy Makers for compensatory and punitive damages;

    iv.    Awarding Plaintiff costs, including reasonable attorney's fees; and

    v.    Granting such other and further relief as this Court deems just.

**COUNT V §1983 RETALIATION CLAIM**
**AGAINST DEFENDANTS GRAHAM, WOODS, BALKEN AND BIONDI**

91. Plaintiff realleges and incorporates the allegations of paragraphs 1-12, 14, 18-20, 31-33, and 50-67 as if fully set forth in Count V.

92. The Plaintiff opposed an unlawful employment practice, namely the deprivation of Plaintiff's Fourteenth Amendment right to equal protection due to Plaintiff's sex.

93. Due to that opposition, GRAHAM, WOODS, BALKEN, and BIONDI (collectively "Retaliating Defendants") subjected Plaintiff to adverse employment actions by rescinding Plaintiff's deputy status, elevating disciplinary procedures unnecessarily, and initiating baseless investigations in retaliation against Plaintiff resulting in her constructive termination.

94. Retaliating Defendants acted under color of state law.

**WHEREFORE**, Plaintiff, Casey E. Walsh, prays that this Court will grant judgment:

    i.  Permanently enjoining Retaliating Defendants and any and all other persons in active concert or participation with Retaliating Defendant from violating Plaintiff's Fourteenth Amendment rights as secured by §1983;

    ii.  Awarding judgment against Retaliating Defendants for the back pay and benefits which Plaintiff would have been entitled to but for the Retaliating Defendant's retaliatory acts;

    iii.  Awarding judgment against Retaliating Defendants for compensatory and punitive damages;

    iv.  Awarding Plaintiff costs, including reasonable attorney's fees; and

    vi.  Granting such other and further relief as this Court deems just.

## COUNT VI §1983 CONSPIRACY CLAIM AGAINST DEFENDANTS GRAHAM, WOODS, BALKEN, AND BIONDI

95. Plaintiff realleges and incorporates the allegations of paragraphs 1-12, 14, 18-20, and 50-67 as if fully set forth in Count VI.

96. GRAHAM, WOODS, BALKEN, and BIONDI (collectively "Conspiring

Defendants"), acting under color of state law, conspired with the intent to directly or indirectly deprive Plaintiff of equal protection of the laws or equal privileges and immunities under the laws.

97. Conspiring Defendants committed overt acts in furtherance of the conspiracy by rescinding Plaintiff's deputy status and elevating disciplinary measures.

98. Due to the acts of Conspiring Defendants, Plaintiff was deprived of her rights and privileges under the Fourteenth Amendment as secured under §1983.

**WHEREFORE**, Plaintiff, Casey E. Walsh, prays that this Court will grant judgment:

i.   Permanently enjoining Conspiring Defendants and any and all other persons in active concert or participation with Conspiring Defendants from violating Plaintiff's Fourteenth Amendment rights;

ii.  Awarding judgment against Conspiring Defendants for the back pay and benefits which Plaintiff would have been entitled to but for Conspiring Defendants' acts and omissions;

iii. Awarding judgment against Conspiring Defendants for compensatory and punitive damages;

iv.  Awarding Plaintiff costs, including reasonable attorney's fees; and

vi.  Granting such other and further relief as this Court deems just.

## COUNT VII SEX DISCRIMINATION UNDER TITLE VII HOSTILE ENVIRONMENT AGAINST DEFENDANT CITY

99. Plaintiff realleges and incorporates the allegations of paragraphs 1-13, 15, 18-31, and 50 as if fully set forth in Count VII.

100. Prior to the filing of this action, CITY, though its agents as alleged more particularly above, violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended to be free of sex-based harassment and a hostile working environment.

101. Plaintiff's sex was a substantial motivating factor in the conduct alleged.

102. The conduct by CITY discriminated against Plaintiff with respect to compensation, terms, conditions, or privileges of employment because of Plaintiff's sex.

103. The sex-discriminatory conduct of CITY and its agents proximately, directly, and foreseeably caused Plaintiff damages, including but not limited to, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

104. Plaintiff has no plain, adequate, or complete remedy at law for the actions of CITY, which have caused, and continue to cause, irreparable harm.

105. Plaintiff is entitled to recover attorney's fees and litigation expenses under 42 U.S.C. § 2000e-5(k).

**WHEREFORE**, Plaintiff, Casey E. Walsh, prays that this Court will grant judgment:

    i. Permanently enjoining CITY, its officers, agents, servants, employees, and all other persons in active concert or participation with CITY from violating Title VII's prohibition against sex discrimination as to Plaintiff;

    ii. Awarding judgment against CITY for the back and front pay and benefits which Plaintiff would have been entitled to but for CITY's acts and omissions;

    iii. Awarding judgment against CITY for compensatory damages;

    iv. Awarding Plaintiff costs, including reasonable attorney's fees; and

v.  Granting such other and further relief as this Court deems just.

## COUNT VIII RETALIATION UNDER TITLE VII AGAINST DEFENDANT CITY

106. Plaintiff realleges and incorporated the allegations of paragraphs 1-13, 15, 18-31, and 50 as if they were fully set forth in Count VIII.

107. Plaintiff engaged in "protected activity" by:

    a.  Complaining about discrimination, harassment, hostile work environment and retaliation;

    b.  By filing a charge of discrimination using internal police channels; and

    c.  By filing a charge of discrimination with the EEOC;

108. In response to Plaintiff's complaints, CITY did not prevent further harassment to Plaintiff.

109. Plaintiff's protected activity was a substantial motivating factor in the continued harassment and mistreatment of the Plaintiff by CITY and its agents.

110. The conduct of CITY discriminated against Plaintiff with respect to compensation, terms, conditions, or privileges of employment because of Plaintiff's protected activity.

111. The retaliatory conduct of CITY, through its agents, proximately, directly, and foreseeably caused Plaintiff damages, including but not limited to, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

**WHEREFORE,** Plaintiff, Casey E. Walsh, prays that this Court will grant judgment:

i.  Permanently enjoining CITY, its officers, agents, servants, employees, and all other persons in active concert or participation with CITY from violating Title VII's prohibition against retaliation as to Plaintiff;

ii.  Awarding judgment against CITY for the back and front pay and benefits which Plaintiff would have been entitled to but for CITY's retaliatory acts; iii. Awarding judgment against CITY for compensatory damages;

iv. Awarding Plaintiff costs, including reasonable attorney's fees, and;

v.  Granting such other and further relief as this Court deems just.

**COUNT IX**
**SEX DISCRIMINATION UNDER THE FCRA**
**HOSTILE WORK ENVIRONMENT AGAINST DEFENDANT CITY**

112. Plaintiff realleges and incorporated the allegations of paragraphs 1-12, 16-31, and 50 as if they were fully set forth in Count IX.

113. Plaintiff's sex was a substantial motivating factor in the conduct alleged.

114. The conduct by CITY discriminated against Plaintiff with respect to compensation, terms, conditions, or privileges of employment because of Plaintiff's sex.

115. The sex-discriminatory conduct of CITY and its agents proximately, directly, and foreseeably caused the Plaintiff damages, including but not limited to, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

116. Plaintiff is entitled to recover attorney's fees and litigation expenses under § 760.11(5), FLA. STAT. (2017).

23

**WHEREFORE,** Plaintiff, Casey E. Walsh, prays that this Court will grant judgment:

    i.    Awarding judgment against CITY for the all back pay and benefits which

          Plaintiff would have been entitled to but for CITY's acts;

    ii.   Awarding judgment against CITY for compensatory damages;

    iii.  Awarding Plaintiff costs, including reasonable attorney's fees;

    iv.  Discharging GRAHAM from his position as Chief of Police; and

    v.   Granting such other and further relief as this Court deems just.

## COUNT X RETALIATION UNDER THE FCRA AGAINST DEFENDANT CITY

117. Plaintiff realleges and incorporated the allegations of paragraphs 1-12, 16-20, 31-33, and 50-67 as if they were fully set forth in Count X.

118. Plaintiff engaged in "protected activity" by:

    a.  Complaining about discrimination, harassment, a hostile work environment and retaliation;

    b.  By filing a charge of discrimination using police channels; and

    c.  By filing a charge of discrimination with the EEOC;

119. In response to Plaintiff's complaints, CITY did not prevent further, retaliatory harassment of Plaintiff.

120. Plaintiff's protected activity was a substantial motivating factor in the continued retaliatory harassment and mistreatment of Plaintiff.

121. The conduct of CITY discriminated against Plaintiff with respect to compensation, terms, conditions, or privileges of employment because of Plaintiff's protected activity.

122. The retaliatory conduct of CITY and its agents proximately, directly, and foreseeably caused Plaintiff damages, including but not limited to, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

**WHEREFORE**, Plaintiff, Casey E. Walsh, prays that this Court will grant judgment:

i.   Permanently enjoining CITY, its officers, agents, servants, employees, and all other persons in active concert or participation with CITY from violating the FCRA's prohibition against retaliation as to Plaintiff;

ii.  Awarding judgment against CITY for the back pay and benefits which Plaintiff would have been entitled to but for CITY's retaliatory acts;

iii. Awarding judgment against CITY for compensatory damages;

iv.  Awarding Plaintiff costs, including reasonable attorney's fees; and Granting such other and further relief as this Court deems just.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff, Casey E. Walsh, demands trial by jury for all issues so triable.

Respectfully Submitted by,

Bobi J. Frank, Esq
Florida Bar Number:
The Law Office of Bobi J. Frank, P.A.
2631 NW 41st Street, Suite A-2
Gainesville, FL 32606
Phone: (352) 639-4117
Fax: (352) 639-4118
Email: Bobi@bfranklaw.com
Trial Counsel for Plaintiff

25

**EXHIBIT #1 PLAINTIFF'S NOTICE OF RIGHTS**

**COMMONLY REFERRED TO AS "RIGHT TO SUE"**

**MAY 15, 2018**

EEOC Form 161 (11/16)
## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: Casey E. Walsh
4111 N. W. 44th Avenue
Ocala, FL 34482

From: **Miami District Office**
**Miami Tower, 100 S E 2nd Street**
**Suite 1500**
**Miami, FL 33131**

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2016-05359** | **Latasha Nelson,**<br>**Investigator** | **(305) 808-1751** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Nitza Santa Wright*

**MICHAEL J. FARRELL,**
**District Director**

MAY 1 5 2018

(Date Mailed)

Enclosures(s)

cc: **Respondent Representative:**
**City of Ocala**
**c/o Stephanie Pidermann, Esq.**
**Lydecker/Diaz**
**1221 Brickell Avenue, 19th Floor**
**Miami, FL 33131**

**Charging Party Representative:**
**Bobi J. Frank, P.A.**
**2610 NW 43rd Street, Suite 2C**
**Gainesville, FL 32606**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS  --  **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS  --  **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION  --  **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE  --  **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*