UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CASEY E. WALSH,**

    **Plaintiff,**

v.                                                                                  **Case No: 5:18-cv-402-Oc-30PRL**

**CITY OF OCALA, REUBEN GUINN,
MARY SUE RICH, JAY MUSLEH,
MATTHEW WARDELL, BRENT
MALEVER, JAMES HILTY, KENNETH
GRAHAM, WILLIAM WOODS,
MICHAEL BALKEN and LOUIS
BIONDI**

    **Defendants.**

## REPORT AND RECOMMENDATION[1]

Plaintiff, Casey E. Walsh, a former police officer with the Ocala Police Department, brings this civil rights action against the City of Ocala, Chief of Police Kenneth Graham, Mayor Reuben Guinn, members of the Ocala City Council (James Hilty, Brent Malever, Jay Musleh, Mary Sue Rich, Matthew Wardell), Marion County Sheriff William Woods, OPD Deputy Chief Michael Balken, and OPD Captain Louis Biondi, alleging that the defendants subjected her to a hostile work environment because of her gender, and retaliated against her when she complained of the hostile work environment. This matter is before the court on five motions to dismiss filed by the defendants (Docs. 10, 13, 15, 17, and 18), which were referred to me for the preparation of a Report and Recommendation. Upon review, I submit that Plaintiff has failed to state a claim for hostile

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

environment sexual harassment, and thus, most of her claims fail. However, she has stated claims against the City of Ocala (her employer) for retaliation under both Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act ("FCRA").

## I.     Background

On August 3, 2009, Plaintiff was hired by the Ocala Police Department. In January 2012, Graham was rehired by the City as the Chief of Police. Plaintiff alleges that on six occasions from February 1, 2016 through September 15, 2016, Chief Graham made sexually charged and offensive comments to her. (Complaint at ¶¶ 21-27). She complained about Chief Graham's actions informally to her superior officer, formally through official police union channels, and through the filing of a complaint with the EEOC. (Complaint at ¶¶ 31, 32).

On September 15, 2016, the City of Ocala hired a law firm to investigate Graham's conduct. (Complaint at ¶ 33). During the pendency of the investigation, Chief Graham was permitted to go on administrative leave instead of being suspended. (Complaint at ¶ 41). Plaintiff takes issue with the handling of the investigation by the law firm and alleges improper conduct by Mayor Guinn and the City Council members. (Complaint at ¶¶ 33-47). The law firm ultimately delivered a favorable finding and Graham was reinstated in January 2017. (Complaint at ¶ 48).

Plaintiff alleges that after Chief Graham's reinstatement she was subjected to retaliation by Chief Graham and others. Specifically, she alleges that Sheriff Woods suddenly and without explanation rescinded her deputy status with the Marion County Sheriff's Department, Deputy Chief Balken elevated disciplinary proceedings unnecessarily, and Captain Biondi initiated baseless investigations. (Complaint at ¶¶ 51-66). Plaintiff alleges that this all culminated in her constructive discharge on July 14, 2017. (Complaint at ¶ 67).

On August 1, 2018, Plaintiff filed her Complaint alleging ten counts, which are summarized, in part, based on the titles she gave them: (1) a hostile environment sexual harassment claim against Chief Graham under 42 U.S.C. § 1983 for violating her right to equal protection under the 14th Amendment to the U.S. Constitution; (2) a § 1983 hostile environment sexual harassment claim against Mayor Guinn and City Council members because they allegedly knew of Graham's conduct but failed to prevent it; (3) a claim for municipal liability under § 1983 against the City based on the City's alleged policy, practice, or custom that caused the deprivation of her rights by Graham; (4) a § 1983 ratification claim against Mayor Guinn and the City Council members for allegedly approving of Graham's conduct; (5) a § 1983 retaliation claim against Chief Graham, Sheriff Woods, Deputy Chief Balken, and Captain Biondi for subjecting her to adverse employment action when she complained; (6) a § 1983 conspiracy claim against Chief Graham, Deputy Chief Balken and Captain Biondi to deprive her of equal protection; (7) a Title VII hostile environment sexual harassment claim against the City; (8) a Title VII retaliation claim against the City; (9) a state law claim for hostile environment sexual harassment under the FCRA against the City; and (10) a FCRA retaliation claim against the City. The defendants have all filed motions to dismiss. (Docs. 10, 13, 15, 17, and 18).

**II.     Standard of Review**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). In considering the sufficiency of the complaint, the court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit utilizes a two-pronged approach in its application of the holding in *Ashcroft* and *Twombly*. First, the Court must "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal,* 129 S.Ct. at 1949).

A well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).

With the foregoing standard in mind, and taking the facts asserted in Plaintiff's complaint as true, the Court addresses each of the Defendants' motions.

### III. Discussion

#### A. Hostile Environment Sex Discrimination

Central to Plaintiff's case – indeed several of her claims – is her assertion that Chief Graham discriminated against her based on her gender and created a hostile work environment. She attempts to allege hostile work environment sexual harassment claims against various defendants under § 1983, Title VII, and the Florida Civil Rights Act.[2] Because the standards developed in Title VII litigation (and the FCRA) are similar to litigation under § 1983, the Court will address the claims together. *See Snider v. Jefferson State Community College,* 344 F.3d 1325, 1328 n. 4 (11th Cir.2003) (noting that when § 1983 is used as a parallel remedy for a violation of Title VII "'the *elements* of the two causes of action are the same'") (citation omitted); *Arnold v. Heartland Dental, LLC*, 101 F. Supp. 3d 1220, 1225 (M.D. Fla. March 30, 2015) (finding that the FCRA is modeled after Title VII and that where a plaintiff cannot maintain a claim under Title VII, she cannot maintain a claim based on same conduct under the FCRA).

In order to state a claim for hostile environment sexual harassment, Plaintiff must allege that (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on or because of her sex; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment. *Mendoza v. Borden, Inc*., 195 F.3d 1238 (11th Cir. 1999) (en banc). The severity prong is the focus of this analysis.

Notably, the Eleventh Circuit has repeatedly recognized that Title VII is not a general civility code and that "[s]exual harassment constitutes sex discrimination only when the harassment alters the terms or conditions of employment." *Id.* at 1245. To rise to the level of discrimination, "[t]he employee must subjectively perceive the harassment as sufficiently severe

---

[2] Count I: § 1983 claim against Chief Graham for violation of equal protection under Fourteenth Amendment; Count II: § 1983 claim against Mayor Guinn and City Council members for violation of equal protection under Fourteenth Amendment; Count VII: Title VII claim against the City; and Count IX: FCRA claim against the City.

and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id.* at 1246 (quotations omitted).

"The objective component of this analysis [considers four factors]: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* The Court must proceed with "common sense, and an appropriate sensitivity to social context, to distinguish between general office vulgarity and the conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 811 (11th Cir. 2010) (en banc) (quotations omitted). These standards are well-established, and this Court is obliged to follow this precedent.

In her Complaint, Plaintiff alleges that she was subjected to "numerous sexually charged comments regarding her appearance, her sexuality, and the romantic partners Plaintiff had dated and/or brought to official functions." Complaint at ¶ 21. Specifically, she alleges:

> 22. On or about February 1, 2016, at an OPD awards ceremony which the Plaintiff and her girlfriend attended, GRAHAM made several sexually charged comments regarding the physical appearance of Plaintiff's date, including noting the view of Plaintiff's date "from behind," and implying that he, GRAHAM, would be interested in trading sexual partners with Plaintiff.
>
> 23. On or about May 14, 2016, at the National Law Enforcement Memorial in New York, GRAHAM made several sexually charged comments toward, and in the presence of Plaintiff, including comments about anal and oral sex.
>
> 24. On or about May 14, 2016, GRAHAM entered a unisex bathroom with Plaintiff for the purpose of GRAHAM to sit on the toilet, and Plaintiff to stand at the urinal, to depict gender role reversal.

> 25. On or about May 19, 2016, at the Fallen Officer Memorial in Ocala, Florida, when GRAHAM's wife asked Plaintiff if she could perform a "ride along" with Plaintiff, GRAHAM publicly refused to allow it, announcing his fear that his wife would engage in intimate behavior with Plaintiff.
>
> 26. On or about May 31, 2016, while conducting K-9 training, Plaintiff was approached by GRAHAM, who commented on Plaintiff's appearance in a photograph he saw, specifically mentioning her hair and her makeup, and made the sound, "yum, yum, yum."
>
> 27. On or about September 15, 2016, GRAHAM stated that he would love it if Plaintiff were to date his daughter, but that he feared that if Plaintiff were to be allowed in his home, GRAHAM's wife may have a sexual encounter with Plaintiff.

Plaintiff also recites her EEOC Charge which includes in pertinent part:

> On May 14, 2016, I attended an event at the National Law Enforcement Memorial. After the event a small group of officers and Chief K. Gregory Graham attended a bar during evening hours. Despite being aware of my sexual orientation, Chief Graham degraded my sexual preference. To explain; while at the bar, I attempted to use the restroom. There were two restrooms adjacent to one another. Chief Graham was exiting one restroom as I was entering the other restroom. I noticed that there was a urinal and a toilet. I commented upon it to myself, and in response Chief Graham responded by saying that I could use the urinal and he'd use the toilet. He made a joke in an attempt to reverse gender roles. Chief Graham also humiliated [me] in the presence of my colleagues by suggesting that I had a penis larger than the male officers amongst the group. Chief Graham laughed denoting his actions to [be] good humored banter.

Complaint at ¶10.

Accepting Plaintiff's allegations as true (and assuming each of the comments could constitute sex-based harassment), Plaintiff has alleged only six instances of offensive comments spread over an almost eight-month period. That is, one instance of offensive comments in February, four instances in May, and one instance in September.

This conduct – while inappropriate – is relatively infrequent as compared to cases where the Eleventh Circuit has found a hostile work environment. *See, e.g., Guthrie v. Waffle House, Inc.,* 460 Fed. Appx 803, 807 (11th Cir. 2012) (distinguishing cases that did not state a claim where a few dozen comments or actions were spread out over an 11-month period from actionable cases where comments were made daily or several time a day). Moreover, while these comments were rude and crass, they fail to rise to the level of severity that is required under existing case law to state a claim for hostile work environment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) ("'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (internal citation omitted)); *Howard v. City of Robertsdale*, 168 Fed.Appx. 883, 889-90 (11th Cir. 2006) ("[m]ere 'sex talk' without more, does not rise to the level of objectively severe and pervasive harassment"); *Howard v. Sunniland Corp.,* No. 2:16-cv-321-FtM-99MRM, 2016 WL 6524394, at *3 (M.D. Fla. Nov. 3, 2016) ("the Eleventh Circuit has consistently held that a pattern of rude and insensitive remarks, and/or isolated instances of a more severe nature, are insufficient to establish a hostile work environment").

Indeed, the Eleventh Circuit has repeatedly rejected sexual-harassment claims based on conduct that is as serious or more serious than the conduct at issue here. *See e.g., Guthrie v. Waffle House, Inc.*, 460 Fed. Appx. 803, 804 (11th Cir. 2012) (finding that an employee's conduct of grabbing the plaintiff employee's "butt 'two to five times,' " "talk[ing] dirty" to the plaintiff, stating that he wanted to perform sexual acts with her, and asking the plaintiff on multiple dates despite her continued refusal was not objectively severe or pervasive to support a Title VII claim); *Leeth v. Tyson Foods, Inc.*, 449 Fed.Appx. 849, 853 (11th Cir. 2011) (holding that conduct was not sufficiently severe or pervasive where a manager allegedly attempted to pull the plaintiff into

his lap, made comments to the plaintiff about wanting to "ram his tongue down her throat," came to the plaintiff's house uninvited, and called her on multiple occasions to ask her to go out with him); *Mitchell v. Pope*, 189 Fed. Appx. 911, 913-14 (11th Cir. 2006) (holding conduct was not "severe" enough where plaintiff alleged 16 specific instances of offensive conduct by her supervisor, including offensive utterances and three instances in which he touched or attempted to touch her); *Howard v. City of Robertsdale*, 168 Fed. Appx. 883, 885, 889-90 (11th Cir. 2006) (holding that a supervisor's offensive comments about employees' bodies and sex lives and sexual jokes made in front of other employees on a regular basis did not rise to the level of objectively severe or pervasive harassment); and *Mendoza v. Borden*, 195 F.3d 1238, 1248 (11th Cir. 1999) (en banc) (found severity "clearly absent" where over eleven month period plaintiff alleged one instance of supervisor saying to plaintiff "I'm getting fired up;" one occasion where he rubbed his hip against Plaintiff while touching her shoulder and smiling; two instances in which he made a sniffing sound while looking at plaintiff's groin and one instance of sniffing without looking at her groin; and the supervisor's "constant" following and staring at plaintiff in a "very obvious fashion."). In contrast, and *unlike* the instances of misconduct that Plaintiff raises here, the Eleventh Circuit has found conduct to be severe and pervasive where the female plaintiff's supervisor "frequent[ly]" tried to get plaintiff to date him using "many direct as well as indirect propositions for sex" including "following her into the restroom," "repeated attempts to touch her breasts, place his hands down her pants, and pull off her pants," and "enlisting the assistance of others to hold her while he attempted to grope her." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004).

Accordingly, as plead, Plaintiff's allegations are insufficient under the law to plausibly state a hostile work environment sex discrimination claim. Thus, Count I (§ 1983 claim against

Chief Graham for violation of equal protection under Fourteenth Amendment), Count II (§ 1983 claim against Mayor Guinn and City Council members for violation of equal protection under Fourteenth Amendment), Count VII (Title VII claim against the City), and Count IX (FCRA claim against the City) should be dismissed.

Moreover, because Plaintiff has failed to allege a constitutional violation by Chief Graham – that is, because (as discussed) her allegations don't rise to the level of hostile environment sex discrimination under the 14th Amendment – several other claims necessarily fail. In Count III, Plaintiff attempts to hold the City responsible under § 1983 alleging that the City's widespread and longstanding practice or custom of protecting Chief Graham at all costs caused the deprivation of Plaintiff's Fourteenth Amendment rights. Likewise, in Count IV Plaintiff claims under § 1983 that Mayor Guinn and the City Council members ratified Chief Graham's unconstitutional actions. And in Count VI, Plaintiff asserts that Chief Graham, Sheriff Woods, Deputy Chief Balken, and Captain Biondi conspired to deprive Plaintiff of her Fourteenth Amendment rights. But without the underlying constitutional violation, each of these claims fail. Accordingly, Count III, Count IV, and Count VI should also be dismissed.[3]

### B. Retaliation

This leaves Plaintiff's claims for retaliation. In Count V, Plaintiff alleges that Chief Graham, Sheriff Woods, Deputy Chief Balken, and Captain Biondi retaliated against her for opposing Chief Graham's sexual harassment in violation of her Fourteenth Amendment equal protection rights as secured by § 1983. Plaintiff also alleges claims for retaliation against the City under Title VII (Count VIII) and the FCRA (Count X).

### 1. § 1983 Claim

---

[3] Because these claims fail, the Court need not address defendants' other arguments raised in their motions to dismiss.

Plaintiff concedes that there is no clearly established right under the equal protection clause to be free from retaliation. *Ratliff v. DeKalb County, Ga.,* 62 F.3d 338, 340 (11th Cir. 1995) (noting that although the right to be free from retaliation for making complaints of discrimination is clearly established as a *first amendment* right and as a *statutory* right under Title VII, there is no clearly established right under the *equal protection* clause to be free from retaliation). Nevertheless, she argues that her retaliation claim is viable because it is linked to her allegations of sex discrimination and therefore constitutes part of her equal protection claim which is permissible under *Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir. 1994).

In *Beardsley,* the plaintiff made a complaint of sexual harassment with the department head. While the sexual harassment eventually stopped, her supervisor's harassing behavior continued:

> Instead of giving her unwanted attention, [the supervisor] gave her the cold shoulder. When he did talk to her, he was curt. He regularly criticized her performance. He questioned her orders. When she confronted him about his conduct, he initially just stared at her and then accused her of having no sense of humor.

*Beardsley*, 30 F.3d at 528. Beardsley sued under § 1983 alleging that both the earlier sexual harassment and the later treatment violated her right to equal protection. She claimed that the "cold-shoulder" treatment was illegal retaliation.

The Fourth Circuit agreed and concluded that Beardsley's failure to allege a First Amendment violation did not doom her claim. *Id.* at 530. The Court reasoned that unlike a claim for "pure retaliation in the context of adverse employment action after the claimant has voiced a grievance," for which a First Amendment claim is required, Beardsley was alleging something different:

> Beardsley's claim of retaliation is that Webb continued to discriminate against her after she related to the sheriff Webb's overt sexual harassment. Having been criticized by his superiors, he no

> longer made sexual advances, but his discriminatory conduct continued. He treated her adversely unlike the way he treated men subject to his command. Webb's conduct after his superiors censured him was a mixture of retaliation and continued sexual harassment. Webb's refusal to speak to her and his use of sergeants to relay orders was not consistent with the professional relationship of a superior officer and his subordinate. Instead, it was more like the conduct of a spurned suitor. His conduct maintained and reinforced the hostile work environment that he had created.

*Id.* at 530.

Here, Plaintiff contends that like Beardsley, she plead Chief Graham's initial sexually harassing conduct and then included allegations of continued sexual harassment and retaliation, the furtherance of the hostile work environment, and Graham's behavior as a "spurned suitor." Doc. 31 at 11.

However, as discussed above, Plaintiff has failed to allege a plausible claim for hostile work environment sex discrimination against Chief Graham. And, even if she had, Plaintiff has not alleged any specific actions taken by Chief Graham, after she complained of his alleged discrimination, or by the other Defendants (Woods, Balken, and Biondi) that could be construed as ongoing sexual harassment or that could suggest Plaintiff was treated differently based on her gender. Nor are there any allegations linking the alleged adverse employment actions (i.e., rescinding of her deputy status, elevating disciplinary proceedings unnecessarily, and initiating baseless investigations) to Plaintiff's gender. *See Watkins v. Bowden,* 105 F. d 1344 (11th Cir. 1997) (finding that "to the extent Watkins links her alleged retaliatory dismissal to her gender or race, that allegation constitutes part of her equal protection discrimination claim," while a "pure or generic retaliation claim . . . does not implicate the Equal Protection Clause"). Accordingly, Count V should be dismissed.

### 2. Title VII and the FCRA

What remains are Plaintiff's retaliation claims under Title VII and the FCRA. And here Plaintiff has stated a claim for retaliation against the City under both.[4] To state a claim for retaliation under Title VII and the FCRA, Plaintiff must allege that (1) she participated in an protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 715 (11th Cir. 2002) (citing *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) ).

Here, Plaintiff has alleged that she complained about Chief Graham's behavior to her superior officer, complained formally through official police union channels, and by filing a complaint with the EEOC, activity which is protected by Title VII (Complaint at ¶¶ 31, 32, 107, 118). She further alleges that as a result of her complaints, she suffered adverse employment action, including rescission of her deputy status, elevation of disciplinary proceedings unnecessarily and initiation of baseless investigations. (Complaint at ¶¶ 52, 57, 61, 65, 109, 120).

Taking these allegations as true, which the Court must do at this stage, they are sufficient to state a claim for retaliation. Accordingly, Counts VIII and X should survive the City's motion to dismiss.

### IV.     Recommendation

For the reasons discussed above, the motions to dismiss filed by Sheriff Woods (Doc. 10), Chief Graham (Doc. 13), Deputy Chief Balken and Captain Biondi (Doc. 17), and Mayor Guinn, James Hilty, Brent Malever, Jay Musleh, Mary Sue Rich, Matthew Wardell (Doc. 18) should be **granted** and Counts I, II, IV, V, and VI should be **dismissed** with leave to amend.

---

[4] As noted above, the FCRA is patterned after Title VII, and Florida courts have construed the FCRA in conformity with decisions construing Title VII. *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998). Accordingly, the Court will address the claims together.

The motion to dismiss filed by the City of Ocala (Doc. 15) should be **granted in part and denied in part.** Counts III, VII, and IX should be **dismissed** with leave to amend and the retaliation claims, Counts VIII and X, should be permitted to proceed.

Recommended in Ocala, Florida on January 7, 2019.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy