UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CASEY E. WALSH,**

    **Plaintiff,**

v.                                                                                 **Case No: 5:18-cv-402-Oc-30PRL**

**CITY OF OCALA, REUBEN GUINN,
MARY SUE RICH, JAY MUSLEH,
MATTHEW WARDELL, BRENT
MALEVER, JAMES HILTY, KENNETH
GRAHAM, WILLIAM WOODS,
MICHAEL BALKEN and LOUIS
BIONDI,**

    **Defendants.**

---

### REPORT AND RECOMMENDATION[1]

There is conduct that occurs in the workplace that shouldn't occur. Indeed, never should it ever occur. Courts, however, have consistently attempted to prevent the judiciary from serving as a super-personnel agency, one charged with regulating all degrees of offensive conduct. Simply because something is offensive, even sexually suggestive, doesn't necessarily mean it rises to the level of sexual harassment under the existing law. We might hope that it wouldn't occur, and we certainly expect that when it does, and is reported, it stops, and that no efforts are made to retaliate against the reporter.

To ensure that employees feel free to report misconduct – whether that misconduct is itself actionable or not – the law does recognize a claim for retaliation. One who reports conduct that

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

the employee found offensive cannot in turn be retaliated against in an effort to punish her or discourage her or others. Plaintiff Casey E. Walsh, a former police officer in the Ocala Police Department, alleges exactly that. She claims that she was subjected to sexual harassment by her Chief, which occurred because the City, as well as the Mayor and City Council members, allowed it to occur, and that she was then retaliated against by the City and others for complaining.

Plaintiff thus brings this civil rights action against the City of Ocala, Chief of Police Kenneth Graham, Mayor Reuben Guinn, members of the Ocala City Council (James Hilty, Brent Malever, Jay Musleh, Mary Sue Rich, Matthew Wardell), Marion County Sheriff William Woods, OPD Deputy Chief Michael Balken, and OPD Captain Louis Biondi. The Court previously dismissed most of Plaintiff's Complaint because she failed to allege a plausible claim for hostile environment sexual harassment. She has now filed an Amended Complaint and Defendants have again filed motions to dismiss (Docs. 73, 74, 78, 79, and 80), which have been referred to me.

Despite her efforts to correct the deficiencies previously noted, I submit that Plaintiff again has failed to state a plausible claim for hostile environment sexual harassment and that her only viable claims are those for retaliation against the City under Title VII (Count VIII) and the Florida Civil Rights Act (Count X), neither of which are currently challenged by the defendants now. Whether she can establish that the treatment she received after her reporting occurred because of the reporting is still to be decided. But, as noted in the Court's prior Order, she's at least alleged enough for those claims to survive. I explain below why I submit that the others don't.

**I.   Background**

On August 3, 2009, Plaintiff was hired by the Ocala Police Department ("OPD") as a police officer. In January 2012, Graham was rehired by the City as the Chief of Police. Plaintiff alleges that since Graham was rehired, she, an openly gay female, has been subjected to sexually charged

comments regarding her appearance, sexuality, and romantic partners. She alleges eight occasions in which Chief Graham made sexually charged and offensive comments to her. (Amended Complaint at ¶¶ 29-55). According to Plaintiff, she complained about Chief Graham's actions informally to her superior officer, formally through official police union channels, and through the filing of a complaint with the EEOC. (Complaint at ¶¶ 65, 66).

On September 15, 2016, the City of Ocala hired a law firm to investigate Chief Graham's conduct. (Complaint at ¶ 67). During the pendency of the investigation, Chief Graham was permitted to go on administrative leave instead of being suspended. (Complaint at ¶ 85). Plaintiff takes issue with the handling of the investigation by the law firm and alleges improper conduct by Mayor Guinn and the City Council members. (Complaint at ¶¶ 68-96). The law firm ultimately delivered a favorable finding and Graham was reinstated in January 2017. (Complaint at ¶ 97-99).

Plaintiff alleges that after Chief Graham's reinstatement she was subjected to retaliation by Chief Graham and his friends. Specifically, she alleges that Sheriff Woods suddenly and without explanation rescinded her deputy status with the Marion County Sheriff's Department, Deputy Chief Balken elevated disciplinary proceedings unnecessarily, and Captain Biondi initiated baseless investigations. (Complaint at ¶¶ 104-). Plaintiff alleges that this all culminated in her constructive discharge on July 14, 2017. (Complaint at ¶ 137).

In her Amended Complaint, Plaintiff alleges eleven counts: (1) a hostile environment sexual harassment claim against Chief Graham under 42 U.S.C. § 1983 for violating her right to equal protection under the 14th Amendment to the U.S. Constitution; (2) a § 1983 hostile environment sexual harassment claim against Mayor Guinn and City Council members because they allegedly knew of Graham's conduct but failed to prevent it; (3) a claim for municipal liability under § 1983 against the City based on the City's alleged policy, practice, or custom that caused

the deprivation of her rights by Graham; (4) a § 1983 ratification claim against City for allegedly approving of Graham's conduct; (5) a § 1983 retaliation claim against Chief Graham, Sheriff Woods, Deputy Chief Balken, and Captain Biondi for subjecting her to adverse employment action when she complained; (6) a § 1983 conspiracy claim against Chief Graham, Sheriff Woods, Deputy Chief Balken, and Captain Biondi to deprive her of equal protection; (7) a Title VII hostile environment sexual harassment claim against City; (8) a Title VII retaliation claim against the City; (9) a state law claim for hostile environment sexual harassment under the FCRA against the City; (10) a FCRA retaliation claim against the City; and (11) a claim for hostile environment constructive discharge against the City. The defendants have all filed motions to dismiss (Docs. 73, 74, 78, 79, and 80), to which Plaintiff has responded.

## II.     Standard of Review

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). In considering the sufficiency of the complaint, the court limits its "consideration to

the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit utilizes a two-pronged approach in its application of the holding in *Ashcroft* and *Twombly*. First, the Court must "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal,* 129 S.Ct. at 1949).

A well-pled complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984).

With the foregoing standard in mind, and taking the facts asserted in Plaintiff's Amended Complaint as true, the Court addresses each of the Defendants' respective Motions to Dismiss (Docs. 73, 74, 78, 79, and 80).

### III. Discussion

**A. Hostile Environment Sexual Harassment**

Plaintiff alleges hostile environment sexual harassment claims against various defendants under § 1983, Title VII, and the Florida Civil Rights Act. Because the standards developed in Title VII litigation (and the FCRA) are similar to litigation under § 1983, the Court will address the claims together. *See Snider v. Jefferson State Community College*, 344 F.3d 1325, 1328 n. 4 (11th

Cir.2003) ("We have written that '[w]hen section 1983 is used as a parallel remedy for violation of Title VII ... the elements of the two causes of action are the same.'"); *Arnold v. Heartland Dental, LLC*, 101 F.Supp.3d 1220, 1225 (M.D. Fla. March 30, 2015) (FCRA is modeled after Title VII and where plaintiff cannot maintain claim under Title VII, she cannot maintain claim based on same conduct under the FCRA).

In order to state a claim for hostile environment sexual harassment, Plaintiff must allege that (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on the sex of the employee; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999).

The Eleventh Circuit has repeatedly recognized that Title VII is not a general civility code and that "[s]exual harassment constitutes sex discrimination only when the harassment alters the terms or conditions of employment." *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir.1999) (en banc). To rise to the level of discrimination, "[t]he employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id.* at 1246 (quotations omitted). "The objective component of this analysis [considers four factors]: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* The Court must proceed with "common sense, and an appropriate sensitivity to social context, to distinguish between general office vulgarity and the conduct which a reasonable person in the plaintiff's position would find

severely hostile or abusive." *Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 811 (11th Cir.2010) (en banc) (quotations omitted).

In the original iteration of the Complaint, Plaintiff alleged six episodes over an eight-month period in which Chief Graham allegedly made offensive comments to her directly or in her presence. The Court dismissed Plaintiff's sexual harassment claims finding that Chief Graham's comments were neither sufficiently frequent nor severe to create a hostile work environment. Now, in efforts to bolster her claims, Plaintiff alleges more detail about the same six episodes and adds two earlier incidents. Despite these amendments and the addition of some colorful language, nothing has really changed. Plaintiff still has failed to state a plausible claim for hostile work environment sexual harassment.

Plaintiff now alleges the following episodes:

(1) Approximately eight years ago (so probably early 2011) at a Law Enforcement Dinner GRAHAM approached Plaintiffs date, placed his arm around Plaintiffs date and leaned into her face in a suggestive manner. (Doc. 70 at ¶29).

(2) Approximately six years ago (probably early 2013), GRAHAM stated to Plaintiff that he previously hired the first openly gay female to the SWAT team at his old department and that the female he had hired flirted with his wife and that Plaintiff reminded him a lot of that female. (Doc. 70 at ¶30).

(3) On or about February 1, 2016, at an OPD awards ceremony which the Plaintiff and her fiance attended, GRAHAM made several sexually harassing comments regarding the physical appearance of Plaintiffs fiance. While standing behind Plaintiffs fiance and in front of Plaintiffs colleagues GRAHAM stated, with a sexual undertone, that Plaintiffs fiance was not bad to look at from the back, and stating that he would be interested in trading sexual partners with Plaintiff. (Doc. 70 at ¶¶ 33-34).

(4) On or about May 14, 2016, at the National Law Enforcement Memorial in Washington, D.C. GRAHAM allegedly made several sexually charged comments toward, and in the presence of Plaintiff, while playing a game of "Never Have I Ever" at a bar. GRAHAM asked another female officer, "never have I ever had a cock shoved in my ass," and then asked the group, "who has the best tits at the table." He also wrestled with another female offier over her cell phone in an attempt to view nude photographs of her, and while she was

  resisting, he shoved her face in his groin simulating her performing an oral sex act on him. (Doc. 70 at ¶¶38-49)

(5) On or about May 14, 2016, GRAHAM entered a unisex bathroom while Plaintiff was attempting to exit. GRAHAM questioned Plaintiff on which urine depository she used, the toilet or the urinal, then GRAHAM strongly suggested that Plaintiff stand at the urinal, while he sat on the toilet, and encouraged her to take a picture. (Doc. 70 at ¶50).

(6) On or about May 19, 2016, at the Fallen Officer Memorial in Ocala, Florida, when GRAHAM'S wife asked Plaintiff if she could perform a "ride along" with Plaintiff, GRAHAM publicly refused to allow it, announcing "I am afraid I would come home, and you would be in my bed, with my wife." (Doc. 70 at ¶¶51-53).

(7) On or about May 31, 2016, while conducting K-9 training, Plaintiff was approached by GRAHAM, who commented on Plaintiffs appearance in a photograph he saw, specifically mentioning her hair and her makeup, and made a sound "yum, yum, yum." (Doc. 70 at ¶ 54).

(8) On or about September 15, 2016, GRAHAM stated that he would love it if Plaintiff were to date his daughter, but that he feared that if Plaintiff were to be allowed in his home, GRAHAM'S wife may have a sexual encounter with Plaintiff. (Doc. 70 at ¶55).

  These eight episodes are less substantial—both in terms of frequency and offensiveness—than cases in which the Eleventh Circuit has found actionable hostile environment sexual harassment. As the Court previously noted, the alleged comments by Chief Graham were relatively infrequent as compared to cases where the Eleventh Circuit has found a hostile work environment. (*See* Doc. 68 at 7-8). This is still the case. In fact, the addition of the two earlier episodes served to further dilute the frequency, so now, instead of six episodes spread over an almost eight-month period (as alleged in the Complaint), there are eight episodes stretched over an almost five year period – one episode in 2011, one episode in 2013, one episode in February 2016, four episodes in May 2016, and one episode in September 2016. These sporadic episodes are not sufficiently frequent to establish a hostile work environment. *See e.g., Guthrie v. Waffle House, Inc.,* 460 Fed.Appx. 803, 806 (11th Cir. 2012) (finding a few dozen comments or actions over a period of 11

months not sufficiently frequent); *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (finding frequency of harassing conduct "for the most part lacking," where over eleven month period plaintiff alleged five episodes of harassment and supervisor's "constant" following and staring at plaintiff in a "very obvious fashion.").

Moreover, the majority of Chief Graham's comments constitute, at most, simple teasing and sexual innuendo, as they have been described by other cases. Allegations such as that Chief Graham told Plaintiff that her fiancé looked good from behind; or that Plaintiff reminded him of another openly gay female he had hired to the SWAT team, and who had flirted with his wife; or that he would not allow his wife to perform a "ride along" with Plaintiff because he was afraid he would come home and find her in bed with his wife, might be offensive, but they are not sufficiently severe. *See, e.g., Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) ("A recurring point in these opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80 (1998) ("workplace harassment, even harassment between men and women, is [not] automatically discrimination because of sex merely because the words used have sexual content or connotations."); *Guthrie*, 460 Fed. Appx. at 808 (boorish and rude comments do not rise to a level of severity required for a hostile work place claim); and *Howard v. City of Robertsdale*, 168 Fed.Appx 883, 889-90 (11th Cir. 2006) ("[m]ere sex talk without more, does not rise to the level of objectively severe and pervasive harassment."). The most egregious allegations stem from Chief Graham's conduct one night at a bar in Washington, D.C. during which he led a game of "Never Have I Ever," where he made loud vulgar references to anal sex and the breasts of the female officers who were present, wrestled with another female officer (not the Plaintiff) to see nude photographs of her on her cell

phone, and while she resisted, pushed her head down simulating her performing an oral sex act on him. Although Chief Graham's behavior at the bar can be described as boorish, crass, and juvenile, that isolated incident combined with the seven other less offensive episodes, given their relative infrequency, is not the kind of "severe" sexual harassment that the Eleventh Circuit has found actionable.

Indeed, the Eleventh Circuit has repeatedly rejected hostile environment sexual harassment claims based on conduct that is as serious or more serious than the conduct alleged here. *See, e.g., Guthrie v. Waffle House, Inc.*, 460 Fed.Appx. 803, 806-08 (11th Cir. 2012) (finding that an employee's conduct of grabbing the plaintiff employee's "butt 'two to five times,' " "talk[ing] dirty" to the plaintiff, stating that he wanted to "fuck" her and "lick" her all over, and asking the plaintiff on multiple dates despite her continued refusal was not objectively severe or pervasive to support a Title VII claim); *Leeth v. Tyson Foods, Inc.*, 449 Fed.Appx. 849, 853 (11th Cir. 2011) (holding that conduct was not sufficiently severe or pervasive where a manager allegedly attempted to pull the plaintiff into his lap, made comments to the plaintiff about wanting to "ram his tongue down her throat," came to the plaintiff's house uninvited, and called her on multiple occasions to ask her to go out with him); *Latrece Lockett v. Choice Hotels Intern., Inc.*, 315 Fed.Appx 862, 865-66 (11th Cir. 2009) (finding that alleged harassment was not severe where harasser made crude sexual remarks to plaintiff several times a week for four months and briefly touched her on two occasions); *Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, (11th Cir. 2008) (finding that weekly comments by her supervisor that Plaintiff "looked hot" and should wear tighter clothing, and a statement to her husband that he was eating Plaintiff for lunch were not severe or pervasive); *Mitchell v. Pope*, 189 Fed.Appx. 911, 913-14 (11th Cir. 2006) (holding conduct was not "severe" enough where plaintiff alleged 16 specific instances of

offensive conduct by her supervisor, including offensive utterances and three instances in which he touched or attempted to touch her); *Mendoza v. Borden*, 195 F.3d 1238, 1248 (11th Cir. 1999) (en banc) (found severity "clearly absent" where over eleven month period plaintiff alleged one instance of supervisor saying to plaintiff "I'm getting fired up;" one occasion where he rubbed his hip against Plaintiff while touching her shoulder and smiling; two instances in which he made a sniffing sound while looking at plaintiff's groin and one instance of sniffing without looking at her groin; and the supervisor's "constant" following and staring at plaintiff in a "very obvious fashion."). *Compare with Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (holding that conduct *was* sufficiently severe or pervasive where the female plaintiff's supervisor "frequent[ly]" tried to get plaintiff to date him using "many direct as well as indirect propositions for sex" including "following her into the restroom," "repeated attempts to touch her breasts, place his hands down her pants, and pull off her pants," and "enlisting the assistance of others to hold her while he attempted to grope her.").

    Plaintiff's conclusory allegations that she was humiliated by the comments cannot overcome the objective lack of frequency and severity of those comments. *See Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1248 (11th Cir. 1999) (noting frequency of conduct does not compensate for absence of other three factors –i.e., physically threatening or humiliating conduct, interference with job performance, and severity). Indeed, Plaintiff has cited no case in which a plaintiff established "sufficiently severe or pervasive" sexual harassment without showing that the conduct was at least either severe or frequent. *See, e.g., Reeves v. C.H. Robinson Worldwide, Incl*, 594 F.3d 798, 813-14 (11th Cir. 2010) (concluding that the daily use of sexually explicit language at work by male co-workers was sufficiently pervasive and humiliating that it created a genuine issue of material fact whether a hostile work environment existed, even though the conduct was not

"severe" relative to the conduct found in other cases and did not involve any physically threatening behavior).

Accordingly, as plead, Plaintiff's allegations are insufficient to state a claim for hostile environment sexual harassment. Thus, Count I (§ 1983 claim against Chief Graham for violation of equal protection under Fourteenth Amendment ), Count II (§ 1983 claim against Mayor Guinn and City Council members for violation of equal protection under Fourteenth Amendment), Count VII (Title VII claim against the City), and Count IX (FCRA claim against the City) should be dismissed.

Moreover, because Plaintiff has failed to allege a constitutional violation – that is, that she was subjected to hostile environment sexual harassment – several other claims that depend on such a showing necessarily fail as well: Count III, where Plaintiff sought to hold the City responsible under § 1983 for its purported practice or custom of protecting Chief Graham (and thus allowing or causing him to create the alleged hostile environment); Count IV, where Plaintiff similarly sought to hold the City liable under § 1983 for allegedly ratifying Chief Graham's unconstitutional actions; and Count VI, where Plaintiff sought to hold Chief Graham, Sheriff Woods, Deputy Chief Balken, and Captain Biondi liable for conspiring to deprive Plaintiff of her Fourteenth Amendment rights. Accordingly, Count III, Count IV, and Count VI should also be dismissed.

### B. Retaliation

There is no dispute that Plaintiff has stated a claim for retaliation against the City both under Title VII (Count VIII) and the FCRA (Count X). Indeed, the Court denied the City's motion as to these retaliation claims in the prior order (*see* Docs. 68, 69) and the City raises no argument as to these counts in the instant motion. However, Count V—in which Plaintiff alleges that Chief Graham, Sheriff Woods, Deputy Chief Balken, and Captain Biondi retaliated against her for

opposing Chief Graham's sexual harassment in violation of her Fourteenth Amendment equal protection rights as secured by § 1983—is at issue. I submit that Count V should be dismissed again for the same reasons.

As previously noted, there is no clearly established right under the equal protection clause to be free from retaliation. *Ratliff v. DeKalb County, Ga.,* 62 F.3d 338, at 340 (11th Cir. 1995) (noting that although the right to be free from retaliation for making complaints of discrimination is clearly established as a *first amendment* right and as a *statutory* right under Title VII, there is no clearly established right under the *equal protection* clause to be free from retaliation). And while courts have recognized a narrow exception where the defendant maintained and reinforced the sexually hostile environment in connection with his or her retaliatory acts, see *Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir. 1994); *Palisano v. City of Clearwater*, 219 F.Supp.2d 1249, 1256 (M.D. Fla. Aug. 14, 2002), Plaintiff has failed to allege a plausible claim for hostile environment sexual harassment against Chief Graham. And, even if she had, Plaintiff has not alleged any specific actions taken by Chief Graham, after she complained of his alleged harassment, or by the other Defendants (Woods, Balken, and Biondi) that could be construed as ongoing sexual harassment or that could suggest Plaintiff was treated differently based on her gender. Nor are there any allegations linking the alleged adverse employment actions (i.e., rescinding of her deputy status, elevating disciplinary proceedings unnecessarily, and initiating baseless investigations) to Plaintiff's gender. *See Watkins v. Bowden,* 105 F.3f 1344 (11th Cir. 1997) ("to the extent Watkins links her alleged retaliatory dismissal to her gender or race, that allegation constitutes part of her equal protection discrimination claim," while a "pure or generic retaliation claim . . . does not implicate the Equal Protection Clause"). Accordingly, Count V should be dismissed.

    **C. Constructive Discharge**

In Count XI, Plaintiff purports to assert a claim for "hostile environment constructive discharge" against the City of Ocala. However, while constructive discharge can qualify as an adverse employment action for purposes of federal discrimination claims, the Court is unaware of, and the parties have not offered, any authority suggesting that constructive discharge is a separate cause of action under federal law. *See Alhallaq v. Radha Soami Trading, LLC,* No. 1:11-cv-700-RGV, 20111 WL 13176334, at *10 & n.20 (N.D. Georgia Oct. 13, 2011) ("[t]his Court is not aware of ... any authority suggesting that constructive discharge is a separate cause of action under federal law."); *Bell v. Metro. Atlanta Rapid Transit Auth.*, Civil Action No. 1:10–CV–1117–JEC, 2011 WL 1225899, at *7 (N.D. Ga. Mar. 30, 2011) ("there is no stand-alone constructive discharge cause of action in federal law.").

Moreover, constructive discharge occurs when an employer deliberately makes an employee's working conditions so unbearable that a reasonable person in that position would be compelled to resign. *Zarza v. Tallahassee Housing Authority*, 686 Fed.Appx 747, 753 (11th Cir. 2017). Establishing this claim requires showing an even greater severity or pervasiveness of harassment than is required for a hostile work environment claim. *Id.* Because Plaintiff has not demonstrated that the alleged sexual harassment rose to the level necessary to sustain a hostile environment claim, to the extent she is alleging that her constructive discharge was motivated by sexual harassment, that claim would also fail. *Id.* And, to the extent Plaintiff is claiming that she was constructively discharged in retaliation for Plaintiff reporting Chief Graham's alleged sexual harassment, that assertion is subsumed within her remaining claims for retaliation. Accordingly, Count XI itself should be dismissed.

### IV.     Recommendation

For the reasons discussed above, the motions to dismiss filed by Sheriff Woods (Doc. 73),

Chief Graham (Doc. 74), Deputy Chief Balken and Captain Biondi (Doc. 78), Mayor Guinn, James Hilty, Brent Malever, Jay Musleh, Mary Sue Rich, Matthew Wardell (Doc. 79) and the City of Ocala (Doc. 80) should be **granted** and Counts I, II, III, IV, V, VI, VII, IX, and XI should be **dismissed.**

Recommended in Ocala, Florida on June 17, 2019.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy